UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                                           }
                                                 }
BOBBY BEASLEY and DONNA BEASLEY,                 }        Case No. 11-40642-JJR13
                                                 }
            Debtors.                             }

## OPINION AND ORDER

This case came before the Court on July 14, 2011 for a hearing on confirmation of the Debtors' proposed chapter 13 plan (Doc. 30).[1]  Even if the Debtors ultimately make all payments under the plan, they will not be eligible to receive a discharge because they received a discharge in a previous chapter 7 case filed less than four years before they filed the instant case.  Bankruptcy Code §1328(f)(1)[2] prohibits chapter 13 debtors from receiving a discharge in a chapter 13 case when less than four years separates the respective filing dates of their current chapter 13 case and a previous chapter 7 case in which they were granted a discharge.[3]  The Debtors' ineligibility for discharge is critical to the Court's determination of whether to confirm the plan.

---

[1] This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order.

[2] Unless otherwise indicated, references to the "Bankruptcy Code" or "Code" are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and the symbol "§" is a reference to a section, subsection, or other subdivision of the Code.  References to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[3] The most recent prior chapter 7 case is a joint case involving both current Debtors, with case number 08-42057-JJR7, commenced on September 23, 2008, and discharged on January 15, 2009.

The Debtors' attorney, as well as the chapter 13 trustee, submitted briefs in support of confirmation. After considering the briefs, as well as the testimony of Bobby Beasley, exhibits admitted at the hearing, arguments of counsel, the Debtors' schedules, and creditors' proofs of claim, the Court concludes that, for the reasons that follow, confirmation is due to be denied.

Background and Facts

The current chapter 13 case is the third time the Debtors have sought relief under the Code.[4] At the hearing on confirmation, Mr. Beasley testified that what precipitated the filing of this case were two payday loans he incurred to purchase medication for his grandchildren. Four payday loans totaling $2,203.13 were listed on Schedule F, and all were incurred in October and November 2010. The Court finds, based upon a review of the Debtors' schedules, that the payday loans were merely a symptom of the true financial injury, which was a self-inflicted buying spree in April 2010.

The Debtors had reaffirmed two vehicles in their most recent chapter 7 case: a 2006 Suzuki Grand Vitara and a Toyota Prius (Docs. 16 and 18 in case no. 08-42057). Apparently they were dissatisfied with those vehicles, and were having trouble with the battery in the Prius. They made the decision to upgrade their transportation and incurred purchase money debts for three new or late-model vehicles, totaling almost $68,000.00: (1) $21,149.98 on April 21, 2010 to purchase a 2010 Toyota Corolla; (2) $26,959.00 on April 24, 2010 to purchase a 2007 Toyota Tundra; and (3) $19,899.00 on April 24, 2010 to purchase another 2010 Toyota Corolla. Mr. Beasley testified that the first Corolla was for his wife, the Tundra was for his use, and the third vehicle was for the Debtors' daughter. The daughter was not a member of the Debtors' household, contributed nothing

---

[4] In addition to the chapter 7 case filed within the four-year period preceding the instant case, the Debtors also filed chapter 7 case number 96-43453 in this District and Division on November 22, 1996, and received a discharge in that case on April 18, 1997.

Case 11-40642-JJR13    Doc 54    Filed 09/27/11    Entered 09/27/11 13:45:29    Desc Main
Document      Page 2 of 8

to the household income and paid none of the Debtors' expenses. The vehicle purchased for the daughter was repossessed pre-petition and a deficiency claim was scheduled by the Debtors for $8,749.00.

In addition, the Debtors scheduled four other unsecured loans incurred in 2010, shortly after they received their "fresh start" by virtue of being discharged in their most recent chapter 7 case. One such debt was scheduled as an unsecured obligation for $335.00 to 1st Franklin incurred in July 2010. Based upon a proof of claim filed by 1st Franklin, the debt was in fact secured by a 1991 Lincoln; the 1991 Lincoln was not listed as an asset on Schedule B although it was included in the plan. The Debtors also entered into two executory contracts after receiving their chapter 7 discharge: (1) a storage building obligation of $145.55 per month to Southern Lease Management Group incurred in July 2009, with a balance of $2,689.35 (proof of claim no. 4); and (2) an executory contract with Town & Country Acceptance Corporation for $238.00 per month. To say that the Debtors' current financial problems were caused by two payday loans is to say the straw was responsible for breaking the camel's back.

## "In Good Faith" Analysis

Other than the payday loans that were used to purchase medication, there were no other medical debts, no delinquent mortgage payments, no divorce, no job loss, no interruption or decrease in income, no incarceration, nor other precipitating cause for the Debtors' financial distress other than their own voluntary and imprudent use of credit in the wake of their chapter 7 discharge. The Court agrees with the trustee's position that bad choices do not necessarily equate to bad faith. The Court cannot ignore, however, its mandate and obligation under the Code to confirm a chapter 13 plan only if the Court finds the Debtors' case, not just the proposed plan, is filed in good faith under

3

§ 1325(a)(7). [5]  This Court agrees with those courts finding that a case not filed "in good faith" is different from finding the case was filed "in bad faith."  The Debtors have the burden of proof to establish each element required for confirmation, including establishing that the case was filed in good faith.[6]

The plan proposes that the Debtors will continue to pay their home mortgages, neither of which is in default, directly to the mortgage lenders — not through plan payments made to the trustee.  It proposes to pay the two most recent vehicle debts, as well as the debt to 1st Franklin on the unscheduled Lincoln.  The plan will pay interest at 4.5% on the Tundra loan and 4.25% on the other two vehicles loans; substantially less than the contract rates of interest that will continue to accrue but will not be discharged at the end of the plan's five-year commitment period.  Similarly, although the plan purports to pay 100% to unsecured creditors, that is illusory for two reasons.  First, as with the secured vehicle loans, the unsecured debts will continue to accrue interest at contract rates, which is not being paid and will not be discharged when the case is closed.  And second, not all scheduled unsecured creditors filed proofs of claim by the bar date, and the Debtors made no effort to file claims on their behalf as permitted by Code § 501(c) and Bankruptcy Rule 3004.  Hence, even if all plan payments are made, the claims that are not allowed because no proofs of

---

[5] *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 n. 14 (2010) (bankruptcy courts required to address defects in proposed plans even if no creditor raises the issue); *Alabama Dept. Of Economic & Community Affairs v. Ball Healthcare-Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1228-30 (11th Cir. 2011) (bankruptcy courts have independent obligation to determine if absolute priority rule was violated); *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 828 n. 6 (11th Cir. 2003) (bankruptcy courts have independent obligation to ensure compliance with the Code).

[6] *See, e.g., In re Lavilla*, 425 B.R. 572 (Bankr. E.D. Cal. 2010) (discussing the distinction between a finding of "bad faith" and a finding of "not in good faith", and also discussing the burden of proof for confirmation).

4

claim were filed will not be paid, and along with excess accrued interest at contract rates on allowed claims, will not be discharged at the end of the commitment period.

The Eleventh Circuit in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir. 1983), set out a non-exhaustive list of factors for bankruptcy courts to consider when determining the existence of good faith, including "the motivations of the debtor and his sincerity in seeking relief under the provisions of chapter 13 . . . special circumstances such as inordinate medical expense . . . the frequency with which the debtor has sought relief . . . [and] the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors. . . . *Id*. at 888-89. *Kitchens* was decided before the 2005 BAPCPA amendments that added §§ 1325(a)(7) and 1328(f)(1) to the Code. Thus, when *Kitchens* was decided there was nothing in the Code that restricted serial chapter-7-followed-by-chapter-13 filings — there was no statutory waiting period to become eligible for a chapter 13 discharge after being discharged in a chapter 7 case.[7]

---

[7]As this Court discussed in its opinion in *In re Gaddis*, Case Number 11-40050-JJR13, Doc. 72 filed on June 20, 2011, the enactment of § 1328(f)(1) most likely prohibits the filing of a case under chapter 13 until the four-year period is satisfied. This reading of the Code is supported by the United States Supreme Court's opinion in *Johnson v. Home State Bank*, 501 U.S. 78 (1991), wherein the Court analyzed eligibility for bankruptcy relief by reference not just to § 109, but also to the provisions of §§ 727(a)(8) and (a)(9), which are directly analogous to § 1328(f)(1) and which were explicitly stated by the Court in *Johnson* to be "prohibitions" on serial filings. It was the "absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions" that convinced the Supreme Court in *Johnson* that such serial filings (chapter 13 following chapter 7) were not foreclosed. Congress is presumed to have been aware of that interpretation when it enacted current § 1328(f)(1) . *See Johnson*, 501 U.S. at 86. To dismiss as dicta and ignore entirely the "prohibition" analysis in *Johnson* is to ignore the prevailing interpretation against which Congress was working when it enacted § 1328(f)(1), and is directly opposed to the rationale, if not the holding, in *Johnson*. *Contra Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 281-82 (4th Cir. 2008) (dismissing the prohibition language in *Johnson* as dicta and finding the plain language of § 1328(f)(1) does not address eligibility to be a debtor,

5

The Eleventh Circuit recently expounded upon the fundamental objectives of the bankruptcy system: "To begin with, the [Supreme] Court provided guidance by setting forth the three *critical* in rem functions of bankruptcy courts: '[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a "fresh start" by releasing him, her, or it from further liability for old debt.'" *State of Florida v. Diaz (In re Diaz)*, 647 F.3d 1073, 1084 (11th Cir. 2011) (quoting *Central Virginia Community College v. Katz*, 546 U.S. 356, 363-64 (2006) (emphasis added)). When presented with a chapter 13 case, such as that now before the Court, in which no discharge is attainable, a critical element of the § 1325(a)(7) good faith analysis is consideration of whether the case furthers the intended, legitimate functions of the bankruptcy system. In a case that cannot provide the debtors with a financial fresh start, perhaps the most critical function of bankruptcy for individual debtors, because a discharge is statutorily prohibited, the reasons for nonetheless invoking the court's jurisdiction and protection under the Code must be closely examined.

Under the totality of the circumstances, and after examining the facts of this case in light of the standards established in *Kitchens* and the functional analysis of *Diaz*, the Court finds the instant case was not filed in good faith. The Debtors' motives are questionable given the short time-frame to again reach eligibility for a chapter 7 discharge. The Court cannot ignore the strong possibility of a dismissal of this chapter 13 case after the expiration of the 4-year waiting period immediately followed by yet a third chapter 7 case. There was a dearth of special circumstances forcing the

---

but only to receive a discharge). Apparently, under the explanation offered in *Bateman* and similar cases, the plain language means one thing in chapter 7 and another in chapter 13. Nonetheless, this Court declines to reach the eligibility issue in the instant case.

Debtors to seek bankruptcy relief, aside from their abuse of credit after receiving two chapter 7 discharges. They have managed to keep their mortgage current and do not need the unique relief that chapter 13 affords to debtors who remain in default on their residential mortgages after being discharged in a *recent* chapter 7 case.[8] The debts incurred in the wake of the Debtors' most recent chapter 7 discharge – particularly in April 2010 – were for non-essential purposes despite their attempt to lay responsibility at the door of the relatively small payday loans. Finally, and most critical for this analysis, no discharge can be granted at the conclusion of the instant case, at which time the unpaid debts and accrued interest at the original contract rates will be due and payable. Code § 1328(f)(1) simply cannot be ignored, especially in light of the significance the Supreme Court and Eleventh Circuit have placed on discharge.[9] A financial fresh start in this case is beyond the Debtors' reach; they can only bide their time and enjoy temporary protection from creditors under chapter 13 until the 4-year chapter 7 waiting period has expired — a luxury Congress never intended when it added § 1328(f)(1) to the Code.

While the Debtors are in all likelihood good people and dedicated parents and grandparents, they have not carried the burden to establish that their case was filed in good faith as required by § 1325(a)(7). As discussed above, lack of good faith does not necessarily equate to bad faith. The Court is concerned that this case is an example of an attempt to use the Bankruptcy Code to facilitate and enable a lifestyle of unnecessary credit purchases unrelated to any circumstance aside from bad credit decisions. Many debtors seek bankruptcy relief because of imprudent use of credit and similar

---

[8] Three years has now passed since the Debtors filed their most recent chapter 7 case. There are no "leftover" mortgage arrears to pay pursuant to Code § 1322(b)(5) as there was in *Johnson* and *Bateman*, both cited in n. 7 *supra,* and as was also the case in *In re Saylors*, 869 F.2d 1434 (11th Cir. 1989).

[9] See the discussion regarding the Eleventh Circuit's decision in *Diaz, supra,* and the discussion of the Supreme Court's emphasis on the availability of discharge at n. 7 *supra*.

7

avoidable circumstances, and those factors, unless egregious, are singularly insufficient to support a finding that good faith is lacking in a case where the debtor is eligible for a discharge. Nonetheless, when those factors are present in a case that cannot statutorily conclude in a discharge, the search for good faith becomes more circumspect. Bankruptcy courts should not sanction and enable the squandering of a financial fresh start by allowing a non-discharge-eligible chapter 13 case to proceed without proof of unforeseen, uncontrollable and unfortunate events that reasonably justified the debtor's incurring post-discharge obligations, or which events were the primary cause of post-discharge home mortgage arrears. Additionally, good faith can be found in a chapter 13 case that was immediately filed on the heels of a chapter 7 discharge, as was the situation in *Johnson* and *Bateman, supra,* for the purpose of curing home mortgage defaults pursuant to § 1322(b)(5) that remained outstanding after a *recently* granted chapter 7 discharge. While this Court believes there is a strong argument to be made that chapter 13 relief is no longer available under any circumstances when § 1328(f)(1) prohibits discharge, until the appellate case law further develops, this Court will continue to recognize the limited exceptions discussed above.

## Conclusion

Based upon the foregoing, confirmation of the Debtors' plan (Doc. 30) is hereby DENIED. Inasmuch as plan confirmation cannot be achieved, this case is *sua sponte* DISMISSED.[10]

So done and ordered this 27th day of September 2011.

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[10] Although Code § 1307(c) provides for dismissal after notice and a hearing, any further consideration of confirmation would be pointless because the Debtors cannot possibly propose a confirmable plan in a case that was not filed in good faith as required by § 1325(a)(7), and this case may not be converted to chapter 7 because relief is not available under that chapter. § 727(a)(8). In other words, the Court finds that it is not appropriate under these circumstances to provide further notice or an opportunity for a hearing before dismissal. § 102(1)(A).

8